LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER HERD,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CITY OF FONTANA; STATE OF CALIFORNIA; BRIAN LEYVA; JASON PERNICIARO; and DOES 1-10, inclusive<br><br>Defendants. | Case No. 5:17-cv-02545-AB-SPx<br><br>[*Hon. Andre Birotte, Jr.*]<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS CITY OF FONTANA'S AND JASON PERNICIARO'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; PLAINTIFFS' ADDITIONAL MATERIAL UNDISPUTED FACTS; CONCLUSIONS OF LAW**<br><br>[*Filed concurrently with Plaintiffs' Memorandum of Points and Authorities in Opposition to the City Defendants' Motion for Summary Judgment; Declaration of Renee V. Masongsong and exhibits thereto; Declaration of Austin Banuelos; Declaration of Roger Clark; Declaration of Alexander Herd*]<br><br>Date: November 8, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B<br><br>Judge: Hon. André Birotte, Jr. |

TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS HEREIN:

Plaintiffs hereby submit their Responses and Objections to Defendants' Statement of Uncontroverted Facts, Plaintiffs' Additional Material Undisputed Facts in Opposition to Defendants' Motion for Partial Summary Judgment, and Plaintiffs' Conclusions of Law.

DATED: October 18, 2019          LAW OFFICES OF DALE K. GALIPO


By: ___*/s/ Renee V. Masongsong*___
     Dale K. Galipo
     Renee V. Masongsong
     Attorneys for Plaintiffs

## PLAINTIFFS' RESPONSIVE SEPARATE STATEMENT

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| 1. On the morning of May 31, 2017, California Highway Patrol Officer Brian Leyva and Fontana Officer Jason Perniciaro, were present in a Wal-Mart parking lot to investigate a report of a stolen car.<br><br>See, Deposition of Brian Leyva ("Leyva Depo."), 25:6-27:9, Exhibit "A," Declaration of S. Frank Harrell ("Harrell Decl."), ¶ 3; see also, Deposition of Jason Perniciaro ("Perniciaro Depo."), 19:5-19:25, Exhibit "B," Harrell Decl., ¶ 4; Declaration of Jason Perniciaro ("Perniciaro Decl.,") ¶¶ 4, 5; Declaration of Brian Leyva ¶¶ 1, 3 | Disputed to the extent that this stolen vehicle dispatch was unrelated to Mr. Herd and/or the decedent. At the time of the shooting, Officers Leyva and Perniciaro had no information that the dark Honda was stolen. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 75:10-18; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 37:16-20; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 11:11-12. |
| 2. At the time, both Officers were assigned to the San Bernardino County Auto Theft Task Force.<br><br>See, Perniciaro Decl., ¶ 3; see also, | Undisputed. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| Declaration of Brian Leyva ("Leyva Decl."), ¶ 1 | |
| 3. While in the parking lot, Officer Leyva observed two males—later determined to be driver Decedent James Gleason ("Decedent Gleason") and passenger Plaintiff Alexander Herd ("Plaintiff Herd")—riding in a dark colored Honda.<br><br>See, Leyva Depo., 27:10-27:25, Exhibit "A," Harrell Decl., ¶ 3; see also, Leyva Decl., ¶ 4 | Undisputed. |
| 4. As Officer Perniciaro completed paperwork related to the reportedly stolen vehicle, Officer Leyva advised Officer Perniciaro that it appeared Decedent Gleason was driving as if he were "casing" the Wal-Mart parking lot.<br><br>See, Perniciaro Decl., ¶ 7 | Objection: calls for speculation and lacks foundation; not relevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest; probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404. |
| 5. Decedent Gleason pulled the dark | Objections: compound; vague and |

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| colored Honda next to a parked white colored Honda briefly before parking directly in front of Officer Leyva.<br><br>See, Leyva Depo., 27:17-28:5, Exhibit "A," Harrell Decl., ¶ 3; see also, Leyva Decl., ¶ 4 | ambiguous; assumes facts not in evidence that the decedent intended to park in front of Officer Leyva; not relevant under Fed. R. Evid. 401, 402. |
| 6.  Officer Leyva advised Officer Perniciaro that after Plaintiff Herd entered the vehicle, Decedent Gleason drove the dark colored Honda and parked it to the left of the white Honda.<br><br>See, Perniciaro Decl., ¶ 9; Leyva Decl., ¶ 6; see also, Wal-Mart Surveillance Footage, "Export_EXTERIOR FRONT 02_Wednesday May 31 2017170137e0e6b05" at 22:45, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under | <u>Objections</u>: compound; vague and ambiguous; not relevant under Fed. R. Evid. 401, 402. |

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| Seal | |
| 7. Officer Leyva advised Officer Perniciaro that Plaintiff Herd approached the driver's side door of the white Honda, manipulated the driver's door handle, and eventually gained entry into the car.<br><br>See, Perniciaro Decl., ¶ 10; Leyva Decl., ¶ 6; Leyva Depo., 29:8-29:13, Exhibit "A," Harrell Decl., ¶ 3; see also, Wal-Mart Surveillance Footage, "Export_EXTERIOR FRONT 02_Wednesday May 31 2017170137 e0e6b05" at 23:10, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal | <u>Objections</u>: compound; vague and ambiguous; not relevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest; probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404. |
| 8. Based on his training and experience, Officer Leyva believed Plaintiff Herd was attempting to steal the white Honda. | <u>Objections</u>: Officer Leyva's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402; also irrelevant as Plaintiffs do not maintain a claim for unreasonable detention |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| See, Leyva Depo., 79:4-17, Exhibit "A," Harrell Decl., ¶ 3; see also, Leyva Decl., ¶ 6. | and arrest; probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404; calls for speculation and lacks foundation. |
| 9. Officer Leyva advised Officer Perniciaro that he believed the occupants of the dark colored Honda were going to steal the white Honda.<br><br>See, Perniciaro Depo., 26:17-27:8, Exhibit "B," Harrell Decl., ¶ 4; see also, Perniciaro Decl., ¶ 9. | Objections: Officer Leyva's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402; also irrelevant as Plaintiffs do not maintain a claim for unreasonable detention and arrest; probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404; calls for speculation and lacks foundation. |
| 10. Officer Perniciaro drove his unmarked police vehicle, parked behind the dark colored Honda, activated a red- and-blue forward-facing flashing police light, and exited his vehicle. | Objection: compound.<br>Disputed to the extent that Mr. Herd and the decedent did not observe Officer Perniciaro's emergency lights activated. Herd Decl. at ¶ 6.<br>Disputed. At the time of the shooting, Mr. Herd did not know that Officer |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| See, Perniciaro Depo., 20:22-20:25, 27:18-28:4, 29:22-30:22, Exhibit "B," Harrell Decl., ¶ 4; Perniciaro Decl., ¶¶ 12, 13; see also, Wal-Mart Surveillance Footage, "Export_EXTERIOR FRONT 02_Wednesday May 31 2017170137e0e6b05" at 24:03, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal. | Perniciaro and Officer Leyva were police officers. Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10, 137:17-18. |
| 11. Based on Officer Perniciaro's training and experience, Hondas like this white Honda are commonly a target for theft.<br><br>See, Perniciaro Decl., ¶ 12. | <u>Objections</u>: irrelevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest; calls for speculation and lacks foundation. <u>Disputed</u> to the extent that under the facts of this case, a reasonably well-trained officer would not have shot at the dark Honda or its occupants because the occupants were attempting to steal a vehicle. Clark Decl. at ¶ 34. |

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| 12. Officer Perniciaro observed Plaintiff Herd inside the white Honda and it appeared to Officer Perniciaro that Plaintiff Herd was trying to start the vehicle.<br><br>See, Perniciaro Decl., ¶ 12. | Objections: irrelevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest; calls for speculation and lacks foundation.<br>Disputed to the extent that under the facts of this case, a reasonably well-trained officer would not have shot at the dark Honda or its occupants because the occupants were attempting to steal a vehicle. Clark Decl. at ¶ 34. |
| 13. After Officer Perniciaro activated his red-and-blue forward facing light, Plaintiff Herd exited the white Honda and returned to the front passenger seat of the dark-colored Honda.<br><br>See, Perniciaro Depo., 31:1-18, 31:25- 32:2, Exhibit "B," Harrell Decl., ¶ 4; Perniciaro Decl., ¶ 15; see also, Wal- Mart Surveillance Footage, "Export_EXTERIOR | Objection: compound; irrelevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest.<br><br>Disputed. At the time of the shooting, Mr. Herd did not know that Officer Perniciaro and Officer Leyva were police officers.<br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10, 137:17-18; Herd Decl. at ¶ 4. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| FRONT 02_Wednesday May 31 2017170137e0e6b05" at 24:23, Exhibit "1" to Phillips Decl. submitted with Defendants' Joint Application to File Exhibits Under Seal | Disputed. According to Mr. Herd and Mr. Banuelos, neither Officer Leyva nor Officer Perniciaro identified himself as a police officer prior to the shots starting. Banuelos Decl. at ¶ 3; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 146:4-19; Herd Decl. at ¶ 3. Disputed that the emergency lights were activated prior to or at the time of the shooting. Herd Decl. at ¶ 6. Disputed to the extent that the emergency lights are not visibly activated in the video. Clark Decl. at ¶ 28. |
| 14. Officer Perniciaro suspected Plaintiff Herd moved quickly from the white Honda into the dark colored Honda because Plaintiff Herd saw Officer Perniciaro's flashing police lights.<br><br>See, Perniciaro Decl., ¶ 15. | Objection: compound. Officer Perniciaro's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402 as Plaintiffs do not maintain a claim for unreasonable detention and arrest; calls for speculation and lacks foundation.<br><br>Disputed. At the time of the shooting, |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Mr. Herd did not know that Officer Perniciaro and Officer Leyva were police officers. Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10, 137:17-18; Herd Decl. at ¶ 3. Disputed. According to Mr. Herd and Mr. Banuelos, neither Officer Leyva nor Officer Perniciaro identified himself as a police officer prior to the shots starting. Banuelos Decl. at ¶ 3; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 146:4-19; Herd Decl. at ¶ 3. Disputed that the emergency lights were activated prior to or at the time of the shooting. Herd Decl. at ¶ 6. Disputed to the extent that the emergency lights are not visibly activated in the video. Clark Decl. at ¶ 28. Disputed to the extent that under the facts of this case, a reasonably well-trained officer would not have shot at |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | the dark Honda or its occupants because the occupants were attempting to steal a vehicle. Clark Decl. at ¶ 34. |
| 15. Officer Perniciaro believed he had reasonable suspicion to detain Plaintiff Herd.<br><br>See, Perniciaro Decl., ¶ 13. | Objection: irrelevant; Plaintiffs do not maintain a claim for unreasonable detention and arrest. Fed. R. Evid. 401, 402. |
| 16. Officer Leyva exited his police unit and began running around the back of his vehicle toward the front of the dark colored Honda.<br><br>See, Leyva Decl., ¶ 9; see also, Wal-Mart Surveillance Footage, "Export_EXTERIOR FRONT 02_Wednesday May 31 2017170137e0e6b05" at 24:23, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal. | Objections: compound; vague and ambiguous.<br>Disputed to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark Decl. at ¶ 29.<br>Disputed: When Officer Perniciaro was firing into the dark Honda, he was positioned to the driver side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. At the time of Officer Perniciaro's shots, Officer Leyva was to the driver side of the dark Honda, |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | out of the Honda's path, in a position of safety. |
| | | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 53:19-22; Banuelos Decl. at ¶ 6; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10; Clark Decl. at ¶ 36(b)(iii). |
| | | Disputed to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. |
| | | Disputed to the extent that if Officer Leyva felt that he were close to the path of the dark Honda, then he had ample room to move out of the way and in fact was out of the path of the dark Honda—therefore, there was no reason for either officer to shoot. Clark Decl. at ¶ 36(b)(iv). |
| 17. | Officer Perniciaro initially moved | Objections: compound; vague and |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| toward the passenger-side "A pillar" of the dark colored Honda and could tell the vehicle was "on."<br><br>See, Perniciaro Decl., ¶ 16. | ambiguous as to time.<br><br>Disputed to the extent that when Officer Perniciaro was firing into the dark Honda, he was positioned to the passenger side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda.<br><br>Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 66:2-16 at 67:3-5, at 68: 3-8; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10, 62:24-64:10; Banuelos Decl. at ¶ 4; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 122:13-18; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Clark Decl. at ¶ 36(b).<br><br>Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4.<br><br>Disputed to the extent that prior to the |

-14-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. |
| 18. As Officer Perniciaro approached the dark colored Honda on foot, he identified himself as law enforcement and yelled police commands at Plaintiff Herd and Decedent Gleason that were intended to be loud enough for them to hear.<br><br>See, Perniciaro Depo., 32:21-33:6, 35:9-35:15, Exhibit "B," Harrell Decl., ¶ 4; see also, Perniciaro Decl., ¶¶ 14, 16, 17. | Objection: compound; the officer's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402; lacks foundation and calls for speculation that Mr. Herd and/or the decedent heard the officer identify himself as law enforcement.<br>Disputed. At the time of the shooting, Mr. Herd did not know that Officer Perniciaro and Officer Leyva were police officers.<br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10, 137:17-18.<br>Disputed. According to Mr. Herd and Mr. Banuelos, neither Officer Leyva nor Officer Perniciaro identified himself as a police officer prior to the shots starting. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Declaration of Austin Banuelos at ¶ 3; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 146:4-19. |
| 19. The passenger side window of the dark colored Honda was partially down.<br><br>See, Perniciaro Decl., ¶ 17. | Undisputed. |
| 20. Decedent Gleason reversed the dark colored Honda towards Officer Perniciaro's police vehicle.<br><br>See, Leyva Depo. 17:16-18, Exhibit "A," Harrell Decl., ¶ 3; see also, Perniciaro Decl., ¶ 19; Leyva Decl., ¶ 10 | <u>Objections</u>: vague and ambiguous as to "towards."<br><u>Disputed</u>. According to Mr. Herd, Officer Perniciaro gave only one command to Mr. Herd and the decedent but did not say "stop," "raise your hands" or "turn the car off." Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 120:21-121:5. |
| 21. Officer Perniciaro moved on foot along with the dark colored Honda, pointed his weapon at the driver and continued to give Gleason law enforcement commands to stop the car. | <u>Objections</u>: compound; vague and ambiguous as to "along with."<br><u>Disputed</u> as to the commands. According to Mr. Herd, Officer Perniciaro gave only one command to Mr. Herd and the decedent but did not say "stop," "raise your hands" or |

-16-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| See, Perniciaro Depo., 40:16-42:1, Exhibit "B," Harrell Decl., ¶ 4; Perniciaro Decl., ¶ 19 | "turn the car off." Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 120:21-121:5. Disputed to the extent that when Officer Perniciaro was firing into the dark Honda, he was positioned to the passenger side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 66:2-16 at 67:3-5, at 68: 3-8; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10, 62:24-64:10; Banuelos Decl. at ¶ 4; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 122:13-18; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Clark Decl. at ¶ 36(b). Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Honda. Banuelos Decl. at ¶ 4. <u>Disputed</u> to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. |
| 22. Because the passenger side window was partially open, Officer Perniciaro believed Decedent Gleason and Plaintiff Herd heard his commands.<br><br>See, Perniciaro Decl., ¶ 19. | <u>Objection</u>: compound; the officer's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402; lacks foundation and calls for speculation that Mr. Herd and/or the decedent heard the officer identify himself as law enforcement.<br><u>Disputed</u>. According to Mr. Herd, Officer Perniciaro gave only one command to Mr. Herd and the decedent but did not say "stop," "raise your hands" or "turn the car off." Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 120:21-121:5. |
| 23. Officer Perniciaro warned Gleason that if he did not comply, Officer Perniciaro would shoot. | <u>Disputed</u>. The officers failed to give the occupants of the dark Honda time to comply with any commands or |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| See, Perniciaro Depo., 40:16-40:21, Exhibit "B," Harrell Decl., ¶ 4; Herd Depo., 193:17-194:9, 197:10-16, Exhibit "C," Harrell Decl., ¶ 5; see also, Perniciaro Decl., ¶ 22 | warnings, and giving a command or warning without giving time to comply is tantamount to not giving a command or warning at all. Clark Decl. at ¶ 36(m). Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4. Disputed to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. Disputed: This was not an immediate defense of life situation. Clark Decl. at ¶ 36(a). Disputed: Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | serious bodily injury; in other words, a subjective fear is not enough. Clark Decl. at ¶ 10. <br><br> Disputed: Under the facts of this case, neither Officer Leyva nor Officer Perniciaro would have been justified in shooting at the dark Honda or its driver as a fleeing felon. Clark Decl. at ¶ 36(s). <br><br> Disputed: Under the facts of this case, a reasonably well-trained officer would not have shot at the dark Honda or its occupants because the occupants were attempting to steal a vehicle. Clark Decl. at ¶ 34. |
| 24. Decedent Gleason accelerated forward toward the location where Officer Perniciaro believed Officer Leyva to be located. <br><br> See, Perniciaro Decl., ¶ 23; Leyva Decl., ¶ 10; Leyva Depo., 35:5-36:2, Exhibit "A," Harrell Decl., ¶ 3; Perniciaro Depo., 42:2-8, 44:12- | Objections: Officer Leyva's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402. <br><br> Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4. <br><br> Disputed to the extent that prior to the |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| 44:14, Exhibit "B," Harrell Decl., ¶ 4; see also, Wal-Mart Surveillance Video, "Export_EXTERIOR FRONT 02_Wednesday May 31 2017170137e0e6b05" at 24:28, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal; Wal-Mart Surveillance Video, "Export_PARKING LOT POLE 06_Wednesday May 31 2017170137 45bc446" at 24:27, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal. | gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. <br><br> Disputed. According to Mr. Herd and Mr. Banuelos, the Honda was not moving when the shots started. Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13. <br><br> Disputed. The dark Honda was not moving when the shots started and then slowly rolled forward after the shots started. Clark Decl. at ¶ 30. <br><br> Disputed to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark Decl. at ¶ 29. <br><br> Disputed: Officer Perniciaro did not see Officer Leyva in the path of the dark Honda at any time. Perniciaro Depo. ("Exhibit 2" to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Masongsong Decl.) at 46:10-13, 60:21-23, at 61:6-10. |
| | <u>Disputed</u>: Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots. |
| | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14. |
| | <u>Disputed</u>. Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks might move. Clark Decl. at ¶ 36(b)(v). |
| | <u>Disputed</u>. Officer Leyva cut off the dark Honda's path of travel with his unmarked vehicle. |
| | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 29:10-12; |

-22-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 29:20-23; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:26. Disputed. Police officers are trained not to stand in the path of a vehicle they think might move. Clark Decl. at ¶ 21. Disputed to the extent that if Officer Leyva felt that he were close to the path of the dark Honda, then he had ample room to move out of the way and in fact was out of the path of the dark Honda—therefore, there was no reason for either officer to shoot. Clark Decl. at ¶ 36(b)(iv). |
| 25. | The left-front portion of the dark colored Honda was approximately 4.3 feet from Officer Leyva at the time Decedent Gleason started accelerating forward.<br><br>See, Declaration of Louis Peck ("Peck Decl.,"), ¶ 5a, and pgs. 11-16 | Objection: calls for speculation; vague and ambiguous; assumes facts not in evidence as to "acclerating." Disputed: Officer Perniciaro did not see Officer Leyva in the path of the dark Honda at any time. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 46:10-13, |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| of Exhibit "2" attached thereto. | 60:21-23, at 61:6-10.<br><br>Disputed: Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots.<br><br>Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14.<br><br>Disputed. Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks might move. Clark Decl. at ¶ 36(b)(v).<br><br>Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4.<br><br>Disputed to the extent that prior to the |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5.<br><br>Disputed. According to Mr. Herd and Mr. Banuelos, the Honda was not moving when the shots started. Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13.<br><br>Disputed. The dark Honda was not moving when the shots started and then slowly rolled forward after the shots started. Clark Decl. at ¶ 30.<br><br>Disputed to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark Decl. at ¶ 29.<br><br>Disputed. Officer Leyva cut off the dark Honda's path of travel with his unmarked vehicle. Perniciaro Depo. ("Exhibit 2" to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Masongsong Decl.) at 29:10-12; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 29:20-23; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:26. |
| | Disputed: Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. Clark Decl. at ¶ 10. |
| | Disputed. Police officers are trained not to stand in the path of a vehicle they think might move. Clark Decl. at ¶ 21. |
| | Disputed to the extent that if Officer Leyva felt that he were close to the path of the dark Honda, then he had ample room to move out of the way and in fact was out of the path of the dark Honda—therefore, there was no reason for either officer to shoot. |

-26-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Clark Decl. at ¶ 36(b)(iv). <br><br> Disputed. There was no body damage to Officer Leyva's white truck. <br><br> Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 39:13-15; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:3-9. <br><br> Disputed. Officer Leyva did not see any tire marks on the roadway left from the Honda. <br><br> Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 40:24-41:1. <br><br> Disputed. The dark Honda could not have been traveling at any substantial speed at the time of impact with Officer Leyva's undercover vehicle or when the dark Honda moved forward after the shots started, considering that there is no body damage to Officer Leyva's white truck and no damage to the front of the dark Honda. Clark Decl. at ¶ 36(c). |
| 26. | At his rate of acceleration, Decedent Gleason could have reached Officer | Objection: calls for speculation and lacks foundation; Fed. R. Evid. 702. |

-27-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| Leyva's initial position in just 0.8 seconds, arriving at a speed of 7 miles per hour.<br><br>See, Peck Decl. ¶¶ 5b, 5c, and pgs. 11- 16 of Exhibit "2" attached thereto. | Disputed: Officer Perniciaro did not see Officer Leyva in the path of the dark Honda at any time. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 46:10-13, 60:21-23, at 61:6-10.<br>Disputed: Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14.<br>Disputed. Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks might move. Clark Decl. at ¶ 36(b)(v).<br>Disputed to the extent that prior to the |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4. <u>Disputed</u> to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. <u>Disputed</u>. According to Mr. Herd and Mr. Banuelos, the Honda was not moving when the shots started. Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13. <u>Disputed</u>. The dark Honda was not moving when the shots started and then slowly rolled forward after the shots started. Clark Decl. at ¶ 30. <u>Disputed</u> to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Decl. at ¶ 29. |
| | <u>Disputed</u>: This was not an immediate defense of life situation. |
| | Clark Decl. at ¶ 36(a). |
| | <u>Disputed</u>: Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. |
| | Clark Decl. at ¶ 10. |
| | <u>Disputed</u>: When Officer Perniciaro was firing into the dark Honda, he was positioned to the driver side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. At the time of Officer Perniciaro's shots, Officer Leyva was to the driver side of the dark Honda, out of the Honda's path, in a position of safety. |
| | Leyva Depo. ("Exhibit 1" to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Masongsong Decl.) at 53:19-22; Banuelos Decl. at ¶ 6; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10; Clark Decl. at ¶ 36(b)(iii). |
| | Disputed: There are no bullet strikes to the front windshield of the Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 41:23- 42:1; Photos 1-2 ("Exhibits 6-7" to Masongsong Decl.). |
| | Disputed. Officer Leyva cut off the dark Honda's path of travel with his unmarked vehicle. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 29:10-12; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 29:20-23; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:26. |
| | Disputed to the extent that if Officer Leyva felt that he were close to the path of the dark Honda, then he had |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | ample room to move out of the way and in fact was out of the path of the dark Honda at the time of all of the shots—therefore, there was no reason for either officer to shoot. Clark Decl. at ¶.
Disputed. There was no body damage to Officer Leyva's white truck. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 39:13-15; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:3-9.
Disputed. Officer Leyva did not see any tire marks on the roadway left from the Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 40:24-41:1.
Disputed. The dark Honda could not have been traveling at any substantial speed at the time of impact with Officer Leyva's undercover vehicle or when the dark Honda moved forward after the shots started, considering that there is no body damage to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Officer Leyva's white truck and no damage to the front of the dark Honda. Clark Decl. at ¶. |
| 27. As Decedent Gleason drove forward, Officer Perniciaro fired four rounds in succession at Decedent Gleason.<br><br>See, Perniciaro Depo., 43:3-43:12, 44:7-11, Exhibit "B," Harrell Decl., ¶ 4; Perniciaro Decl., ¶ 23. | <u>Disputed</u>: Officer Perniciaro did not see Officer Leyva in the path of the dark Honda at any time. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 46:10-13, 60:21-23, at 61:6-10.<br><u>Disputed</u>: Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14.<br><u>Disputed</u>. Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | might move. Clark Decl. at ¶ 36(b)(v). |
| | <u>Disputed</u>. Officer Leyva cut off the dark Honda's path of travel with his unmarked vehicle. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 29:10-12; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 29:20-23; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:26. |
| | <u>Disputed</u> to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4. |
| | <u>Disputed</u> to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. |
| | <u>Disputed</u>. According to Mr. Herd and Mr. Banuelos, the Honda was not |

-34-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | moving when the shots started. Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13. Disputed. The dark Honda was not moving when the shots started and then slowly rolled forward after the shots started. Clark Decl. at ¶ 30. Disputed to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark Decl. at ¶ 29. Disputed: This was not an immediate defense of life situation. Clark Decl. at ¶ 36(a). Disputed: Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. Clark Decl. at ¶ 10. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed: When Officer Perniciaro was firing into the dark Honda, he was positioned to the driver side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. At the time of Officer Perniciaro's shots, Officer Leyva was to the driver side of the dark Honda, out of the Honda's path, in a position of safety. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 53:19-22; Banuelos Decl. at ¶ 6; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10; Clark Decl. at ¶ 36(b)(iii). Disputed: There are no bullet strikes to the front windshield of the Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 41:23- 42:1; Photos 1-2 ("Exhibits 6-7" to Masongsong Decl.). |

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| | Disputed. There was no body damage to Officer Leyva's white truck. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 39:13-15; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:3-9. Disputed. Officer Leyva did not see any tire marks on the roadway left from the Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 40:24-41:1. Disputed. The dark Honda could not have been traveling at any substantial speed at the time of impact with Officer Leyva's undercover vehicle or when the dark Honda moved forward after the shots started, considering that there is no body damage to Officer Leyva's white truck and no damage to the front of the dark Honda. Clark Decl. at ¶ 36(c). |
| 28. Only a few seconds elapsed from the time the Officers initiated their contact with Plaintiff Herd and | Objection: vague and ambiguous. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| Gleason and the time shots were fired.<br><br>See, Wal-Mart Surveillance Video, "Export EXTERIOR FRONT 02_Wednesday May 31 2017170137 e0e6b05" at 24:17 – 24:28, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal; see also, Wal- Mart Surveillance Video, "Export PARKING LOT LIGHT POLE 06_Wednesday May 31 2017170137 45bc446" at 24:16 – 24:27, Exhibit "1" to Phillips Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal | |
| 29. Officer Perniciaro fired in defense of his partner, Officer Leyva, as he believed Officer Leyva's safety was directly and imminently threatened by Decedent Gleason using his | <u>Objection</u>: compound; the officer's subjective state of mind is irrelevant under Fed. R. Evid. 401, 402.<br><u>Disputed</u>: Officer Perniciaro did not see Officer Leyva in the path of the |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| vehicle as a weapon to evade arrest.<br><br>See, Perniciaro Depo., 52:3-52:14, Exhibit "B," Harrell Decl., ¶ 4; see also, Perniciaro Decl., ¶¶ 23, 29 | dark Honda at any time. Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 46:10-13, 60:21-23, at 61:6-10.<br><br>Disputed: Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots.<br>Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14.<br><br>Disputed. Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks might move. Clark Decl. at ¶ 36(b)(v).<br><br>Disputed to the extent that prior to the shots starting, Mr. Banuelos looked out the front windshield, and there |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | was no person in the path of the dark Honda. Banuelos Decl. at ¶ 4. |
| | Disputed to the extent that prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. Herd Decl. at ¶ 5. |
| | Disputed. According to Mr. Herd and Mr. Banuelos, the Honda was not moving when the shots started. Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13. |
| | Disputed. The dark Honda was not moving when the shots started and then slowly rolled forward after the shots started. Clark Decl. at ¶ 30. |
| | Disputed to the extent that Officer Leyva had his undercover vehicle available to him for cover. Clark Decl. at ¶ 29. |
| | Disputed: This was not an immediate |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | defense of life situation. Clark Decl. at ¶ 36(a). <u>Disputed</u>: Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. Clark Decl. at ¶ 10. <u>Disputed</u>: When Officer Perniciaro was firing into the dark Honda, he was positioned to the driver side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. At the time of Officer Perniciaro's shots, Officer Leyva was to the driver side of the dark Honda, out of the Honda's path, in a position of safety. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 53:19-22; Banuelos Decl. at ¶ 6; Photos 1-3 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | ("Exhibits 6-8" to Masongsong Decl.); Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10; Clark Decl. at ¶ 36(b)(iii). <u>Disputed</u>: There are no bullet strikes to the front windshield of the Honda. Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 41:23- 42:1; Photos 1-2 ("Exhibits 6-7" to Masongsong Decl.). |
| 30. Decedent Gleason was struck by several gunshots, including three rounds from Officer Perniciaro.<br><br>See, Declaration of Lucien C. Haag ("Haag Decl."), ¶¶ 5, 6, and pgs. 5-6 of Exhibit "1" thereto | <u>Objection</u>: Fed. R. Evid. 702; calls for speculation. Undisputed that the decedent was struck by gunshots. |
| 31. Plaintiff Herd was struck by one gunshot in his left clavicle.<br><br>See, Herd Depo., 149:15-152:16, Exhibit "C," Harrell Decl., ¶ 5; see also, Haag Decl., ¶ 6 and pgs. 5-6 of Exhibit "1" thereto | Undisputed. |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| 32. Plaintiff Herd was shot by Officer Leyva, not Officer Perniciaro.<br><br>See, Haag Decl., ¶¶ 5-6 and pgs. 5-6 of Exhibit "1" attached thereto | <u>Objection</u>: Fed. R. Evid. 702; calls for speculation.<br><br><u>Disputed</u>. Prior the shots starting, Mr. Herd ducked as a natural instinct to cover himself from the gun pointed in his face through the open passenger window.<br><br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 13:21-24, 137:17-19, 141:18-20, 145:19-20, 146:4-19.<br><br><u>Disputed</u>. According to Mr. Herd, when Officer Perniciaro pointed his gun in Mr. Herd's face, the barrel of his gun was approximately 3-5 inches from Mr. Herd's nose.<br><br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 232:13-20.<br><br><u>Disputed</u>. Mr. Herd was struck by a gunshot in the back left shoulder area. The gunshot wound has a back to front trajectory with no exit wound. Herd Decl. at ¶ 7. Circumstantial evidence indicates that one of Officer |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Perniciaro's shots may have struck Mr. Herd. |
| 33. | Plaintiff Herd does not know where the bullet that struck him came from, nor does he know what happened during the shooting.<br><br>See, Herd Depo., 149:15-25, 234:3-235:20, Exhibit "C," Harrell Decl., ¶ 5. | Objections: vague and ambiguous as to "what happened during the shooting."<br>Disputed. Prior the shots starting, Mr. Herd ducked as a natural instinct to cover himself from the gun pointed in his face through the open passenger window.<br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 13:21-24, 137:17-19, 141:18-20, 145:19-20, 146:4-19.<br>Disputed. According to Mr. Herd, when Officer Perniciaro pointed his gun in Mr. Herd's face, the barrel of his gun was approximately 3-5 inches from Mr. Herd's nose.<br>Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 232:13-20.<br>Disputed. Mr. Herd was struck by a gunshot in the back left shoulder area. The gunshot wound has a back to |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | front trajectory with no exit wound. Herd Decl. at ¶ 7. Circumstantial evidence indicates that one of Officer Perniciaro's shots may have struck Mr. Herd. |
| 34. | After the shooting, Officer Leyva radioed for medical assistance at Officer Perniciaro's direction.<br><br>See, Perniciaro Depo., 53:11-54:9, 66:14-66:18, Exhibit "B," Harrell Decl., ¶ 4; Perniciaro Decl., ¶ 27; see also, CAD Printout for Incident Number HE171510035 at 7:57:16, CHP-000717 Exhibit "2," Declaration of Olivia Dunlop ("Dunlop Decl."), ¶ 4; Dispatch Audio at 9:37, "HE171510035 LFE RADIO," FON000512, Exhibit "1" to Dunlop Decl. and submitted with Defendants' Joint Application to File Exhibits Under Seal. | Objection: irrelevant, as Plaintiffs dismiss their claims for denial of medical care.<br>Undisputed that this is Officer Perniciaro's testimony. |
| 35. | Officer Perniciaro retrieved a trauma kit and began rendering | Objection: irrelevant, as Plaintiffs dismiss their claims for denial of |

-45-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| medical aid to Gleason by bandaging his head.<br><br>See, Perniciaro Decl., ¶ 28. | medical care.<br>Undisputed that this is Officer Perniciaro's testimony. |
| 36. Officer Perniciaro also rendered medical aid to Plaintiff Herd by applying bandaging and pressure to an entrance wound toward the back of Plaintiff Herd's left shoulder.<br><br>See, Perniciaro Depo., 66:4-9, Exhibit "B," Harrell Decl., ¶ 4; see also, Perniciaro Decl., ¶ 28. | Objection: irrelevant, as Plaintiffs dismiss their claims for denial of medical care.<br>Undisputed that this is Officer Perniciaro's testimony. |
| 37. Decedent Gleason was transported to Desert Valley Hospital.<br><br>See, Phillips Decl., ¶ 7, see also, San Bernardino County Fire Department Records, CHP000683-CHP000688, Exhibit "D," Harrell Decl., ¶ 6 | Objection: irrelevant, as Plaintiffs dismiss their claims for denial of medical care.<br>Undisputed. |
| 38. Plaintiff Herd was transported and treated at Arrowhead Medical Center. | Objection: irrelevant, as Plaintiffs dismiss their claims for denial of medical care. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE |
|---|---|---|
| | See, Herd Depo., 56:19-57:16; see also, Phillips Decl., ¶ 7; San Bernardino County Fire Department Records, CHP000689-CHP000691, Exhibit "E," Harrell Decl., ¶ 7 | Undisputed. |
| 39. | Decedent Gleason was under the influence of methamphetamine at the time of the shooting.<br><br>See, Declaration of Vina Spiehler ("Spiehler Decl.,") ¶ 5, and pgs. 4-5 of Exhibit "2" attached thereto; see also, Deposition of Kristen Steward, 14:15-15:14, 16:4-24, 17:7-22:2, 23:4-22, 35:14-36:11, 43:9-14, 45:5-46:8, 70:4-75:13, 82:12-83:21 and Exhibits 319, 321, and 323 thereto, Harrell Decl., ¶ 8 | <u>Objection</u>: irrelevant, as this information was unknown to the officers at the time of the shooting. Fed. R. Evid. 401, 402; *Graham v. Connor*, 490 U.S. 386 (1989). The probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404. |
| 40. | In a police interview after the shooting, Plaintiff Herd admitted to recent use of heroin and methamphetamine. | <u>Objection</u>: irrelevant, as this information was unknown to the officers at the time of the shooting. Fed. R. Evid. 401, 402; *Graham v. Connor*, 490 U.S. 386 (1989). The |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| **DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| See, Herd Interview Transcript, 29:4-29:16, CHP000296, Exhibit "G", Harrell Decl., ¶ 9 | probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404. |
| 41. Plaintiff Herd pled "no contest" and was convicted on a felony charge of second degree burglary in connection with the May 31, 2017 incident and served eleven months in County Jail.<br><br>See, Request for Judicial Notice, Declaration of Jesse K. Cox in Support of Motion for Summary Judgment and in Support of Request for Judicial Notice, and Exhibits "A," "B," and "C" attached to the Declaration of Jesse K. Cox; see also, Herd Depo., 66:4-11, Exhibit "C," Harrell Decl., ¶ 5 | <u>Objection</u>: irrelevant, as this information was unknown to the officers at the time of the shooting and Plaintiffs do not maintain a claim for unreasonable detention and arrest. Fed. R. Evid. 401, 402; *Graham v. Connor*, 490 U.S. 386 (1989). The probative value outweighs the prejudicial effect under Fed. R. Evid. 403; improper character evidence under Fed. R. Evid. 404. |
| 42. (Defendants appear to have inadvertently skipped No. 42.) | |
| 43. Apart from his shooting, Plaintiff | Undisptued. |

-48-

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| Herd does not complain that Officer Perniciaro used any other means of "excessive force."<br><br>See generally, Plaintiffs' Third Amended Complaint, Exhibit "H," Harrell Decl., ¶ 10. | |

[Nos. 44 through 48 have been omitted from this document for consistency between Plaintiffs' opposition to Defendant City of Fontana's motion for summary judgment and Plaintiffs' opposition to Defendant State of California's motion for summary judgment.]

| PLAINTIFFS' ADDITIONAL MATERIAL UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **Background of the Shooting** ||
| 49. At the time of the shooting, Officers Leyva and Perniciaro had no information that the dark Honda was stolen. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 75:10-18; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 37:16-20; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 11:11-12; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 26:13-15. |
| 50. Relative to this incident, Officers Leyva and Perniciaro were not | Clark Decl. at ¶ 36(f). |

| | | |
|---|---|---|
| | | responding to a violent crime. | |
| 51. | At the time of the shooting, the officers did not have any information that any person in the dark Honda had committed a crime involving injury or death. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 37:24- 38:6. |
| 52. | At the time of this incident, both Officers Leyva and Perniciaro were driving unmarked vehicles. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 29:22-25; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 20:22-24. |
| 53. | At the time of the shooting, Austin Banuelos was a passenger in the back seat of the dark Honda. | Declaration of Austin Banuelos at ¶ 2. |
| 54. | At the time of the shooting, neither Officer Leyva nor Officer Perniciaro knew whether there were any passengers in the back seat of the dark Honda, and yet they fired anyway. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 14:4-15; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 18:9-23; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 13:18, at 20:13-20. |
| 55. | At the time of the shooting, Mr. Herd did not know that Officer Perniciaro and Officer Leyva were police officers. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10, 137:17-18. |
| 56. | According to Mr. Herd and Mr. Banuelos, neither Officer Leyva nor Officer Perniciaro identified | Declaration of Austin Banuelos at ¶ 3; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 146:4-19, |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | himself as a police officer prior to the shots starting. | 147:22-24. |
|---|---|---|---|
| | 57. | At the time of this incident, both Officers Leyva and Perniciaro were dressed in street clothes as opposed to a full police uniform. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 30:1-6; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 20:15- 21:5; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 7:3-10, 7:22-8:1; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 128:2-3, 140:12-20, 146:10-12. |
| | 58. | Officer Leyva agrees that if a suspect observed him with a gun in his hand without his uniform, the suspect might not know that Officer Leyva is a police officer at first. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 63:1-4. |
| | 59. | Officer Perniciaro admits that if he had known he would be handling a situation other than vehicle recovery, he would have worn a tac vest and ballistic vest to make himself identifiable as a police officer. | Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 64:23-65:7. |
| | 60. | The officers had no information that the occupants of the dark Honda were armed with any | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 38:17-19; Perniciaro Depo. ("Exhibit 2" to |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | weapon. | Masongsong Decl.) at 37:21-23. |
|---|---|---|---|
| | 61. | Neither Officer Leyva nor Officer Perniciaro ever saw a weapon or anything that looked like a weapon in the dark Honda or on the person of Mr. Herd or the decedent. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 38:20-23; Clark Decl. at ¶ 36(d). |
| | 62. | Neither Mr. Herd nor the decedent ever verbally threatened to harm either Officer Leyva or Officer Perniciaro. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 38:24-39:3; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 38:10-12. |
| | 63. | Neither Officer Leyva nor Officer Perniciaro ever thought that Mr. Herd or the decedent was shooting at them. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 20:20-22; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 45:8-13. |
| | 64. | Officer Leyva cut off the dark Honda's path of travel with his unmarked vehicle. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 29:10-12; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 29:20-23; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:26. |
| | 65. | At the time of the shooting, Officer Leyva had his undercover vehicle available to him for cover. | Clark Decl. at ¶ 29. |
| | 66. | At the time of the shooting, there were pedestrians in the parking lot. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 64:19-21. |
| | 67. | At the time of the shooting, neither Officer Leyva nor Officer | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 11:14-18; |

| | | | |
|---|---|---|---|
| | | Perniciaro knew the identity of Mr. Herd or anything about his history. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 19:2-4; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 45:27-46:2. |
| | 68. | At the time of the shooting, neither Officer Leyva nor Officer Perniciaro knew the identity of the decedent or anything about his history. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 11:14-18; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 19:2-4; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 45:27-46:2. |
| | 69. | According to Mr. Herd, the passenger window of the Honda was down at the time of the shooting. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 153:2-5, 231:16-19. |
| | | **The Shooting** | |
| | 70. | Officer Perniciaro placed his gun inside the dark Honda through the open passenger window. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 14:23-15:4. |
| | 71. | According to Officer Perniciaro, when he fired his shots, the barrel of his gun was approximately 3-5 feet from the decedent. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 15:15-25. |
| | 72. | According to Mr. Herd, when Officer Perniciaro pointed the gun at Mr. Herd's face, the barrel of the gun was approximately 3-5 inches from Mr. Herd's nose. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 232:13-20. |

| | | |
|---|---|---|
| 73. | Prior the shots starting, Mr. Herd ducked as a natural instinct to cover himself from the gun pointed in his face through the open passenger window. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 13:21-24, 137:17-19, 141:18-20, 145:19-20, 146:4-19. |
| 74. | When Mr. Herd saw a gun pointed in his face, he thought that a gangbanger was trying to harm him, and Mr. Herd was in fear for his life. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 134:6-10. |
| 75. | Officer Perniciaro intentionally pressed the trigger four times. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 13:22-14:2; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 10:2-4; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 72:22-73:3. |
| 76. | Prior to the shots starting, Mr. Banuelos looked out the front windshield, and there was no person in the path of the dark Honda | Banuelos Decl. at ¶ 4. |
| 77. | Prior to the gun being pointed at Mr. Herd's face, Mr. Herd looked out the front windshield, and there was no person standing in the path of the dark Honda. | Herd Decl. at ¶ 5. |
| 78. | When Officer Leyva was firing | Leyva Depo. ("Exhibit 1" to |

| | | | |
|---|---|---|---|
| | | into the dark Honda, he was positioned to the driver side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. | Masongsong Decl.) at 53:19-22; Banuelos Decl. at ¶¶ 4, 6; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10; Clark Decl. at ¶ 36(b)(iii); surveillance video. |
| | 79. | When Officer Perniciaro was firing into the dark Honda, he was positioned to the passenger side of the dark Honda, out of the path of the dark Honda, and no person was in danger of being struck by the dark Honda. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 66:2-16 at 67:3-5, at 68: 3-8; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 53:8-10, 62:24-64:10; Banuelos Decl. at ¶ 4; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 122:13-18; Photos 1-3 ("Exhibits 6-8" to Masongsong Decl.); Clark Decl. at ¶ 36(b)(iii); ; surveillance video. |
| | 80. | Neither officer was struck by the dark Honda or otherwise injured during this incident. | Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 10:11-13, 54:13-15; Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 10:6-8. |
| | 81. | Officer Leyva was not in the path of the dark Honda, and he never had to run or dive out of the path of the dark Honda during this incident. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 56:9-18; Clark Decl. at ¶ 36(b). |
| | 82. | Officer Perniciaro never saw | Perniciaro Depo. ("Exhibit 2" to |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S
STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS;
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 1 | | Officer Leyva in the path of the dark Honda. | Masongsong Decl.) at 46:10-13. |
| 2 | | | |
| 3 | 83. | Officer Perniciaro claims that before he fired his shots, he did not actually look to see whether Officer Leyva was in the path of the dark Honda. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 44:15-17, 60:21-23, at 61:6-10. |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | 84. | Officer Perniciaro admits that if he had known at the time of the shooting that Officer Leyva was not in the path of the dark Honda, then Officer Perniciaro would not have fired any shots. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 60:21-23, at 62:2-14. |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | 85. | Officer Perniciaro knew or should have known that Officer Leyva was not in the path of the dark Honda, based on the officers' training that an officer should not stand in the path of a vehicle the officer thinks might move. | Clark Decl. at ¶ 36(b)(v). |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | 86. | According to the officers and the surveillance video, when the Honda reversed prior to the shots, it was moving slowly. | Perniciaro Int. ("Exhibit 4" to Masongsong Decl.) at 38:15-22; Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 38:3. |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | 87. | According to Officer Perniciaro and the surveillance video, when the dark Honda went in reverse | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:1-13 Perniciaro Int. ("Exhibit 4" to |
| 26 | | | |
| 27 | | | |
| 28 | | | |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S
STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS;
CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | prior to the shots, it only moved backwards approximately 2-4 feet. | Masongsong Decl.) at 37:24-38:7. |
| | 88. | According to Mr. Herd and Mr. Banuelos, the Honda was not moving when the shots started. | Banuelos Decl. at ¶ 5; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 196:12-21, 198:1-4, 230:12-22, 255:24-256:13. |
| | 89. | According to Officer Leyva and the surveillance video, the dark Honda stopped momentarily prior to the dark Honda moving forward. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 18:12-14. |
| | 90. | The dark Honda was not moving when the shots started, and then the dark Honda slowly rolled forward after the shots started. | Clark Decl. at ¶ 30. |
| | 91. | According to Officer Perniciaro, the dark Honda was only traveling at a speed of a few miles per hour at the time of Officer Perniciaro's first shot. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 49:21-50:10. |
| | 92. | According to Officer Leyva, the dark Honda travelled forward, but only a couple of feet. | Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 54:20-24. |
| | 93. | Officer Perniciaro is not sure whether the Honda ever impacted his unmarked vehicle. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 40:17-21. |
| | 94. | After the shooting, Mr. Herd was generally cooperative. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 54:16-21; |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 205:18-20. |
|---|---|---|
| 95. | After the shooting, Mr. Herd was yanked out of the vehicle and thrown to the ground. | Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 156:9-12, 158:11-12, 161:16-23, 204:24-25. |
| **Physical and Forensic Evidence** | | |
| 96. | Mr. Herd was struck by a gunshot in the back left shoulder area. | Herd Decl. at ¶ 7. |
| 97. | The trajectory of the gunshot wound Mr. Herd sustained is back to front, with no exit wound. | Herd Decl. at ¶ 7. |
| 98. | After the shooting, Officer Leyva observed bullet strikes on the driver side window. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 15:9-2, 25-16:12, 42:7-12; Photos 2-3 ("Exhibits 7-8" to Masongsong Decl.). |
| 99. | There are no bullet strikes to the front windshield of the Honda. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 41:23- 42:1; Photos 1-2 ("Exhibits 6-7" to Masongsong Decl.). |
| 100. | Officer Leyva did not see any tire marks on the roadway left from the Honda. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 40:24-41:1. |
| 101. | There was no body damage to Officer Leyva's white truck. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 39:13-15; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:3-9. |
| 102. | The dark Honda could not have | Clark Decl. at ¶ 36(c). |

| | | |
|---|---|---|
| | been traveling at any substantial speed at the time of impact with Officer Leyva's undercover vehicle or when the dark Honda moved forward after the shots started, considering that there is no body damage to Officer Leyva's white truck and no damage to the front of the dark Honda. | |
| 103. | Officer Perniciaro did not observe any damage to the front of his unmarked vehicle that would be consistent with impact damage. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 36:3-9. |
| 104. | After the shooting, no weapons were recovered from any of the individuals in the Honda. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 59:5-7; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 55:18-22. |
| **Standards and Training on the Use of Deadly Force and Shooting at Moving Vehicles and their Drivers** | | |
| 105. | At the time of this incident, POST taught that deadly force is the highest level of force. | Clark Decl. at ¶ |
| 106. | At the time of the shooting, Officer Perniciaro had been trained that deadly force is the highest level of force. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 63:10-16. |
| 107. | At the time of this incident, POST | Clark Decl. at ¶ 7. |

| | | | |
|---|---|---|---|
| | | required that deadly force can only be used as a last resort. | |
| | 108. | At the time of the shooting, Officer Perniciaro had been trained pursuant that deadly force can only be used as a last resort, in the direst of circumstances. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 64:10-16. |
| | 109. | At the time of this incident, POST required that in consideration of the sanctity of life, deadly force is only authorized absent obvious reasonable alternatives. | Clark Decl. at ¶ 8. |
| | 110. | At the time of the shooting, Officer Perniciaro had been trained that deadly force should only be used when no other reasonable options are available. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 64:22-25. |
| | 111. | Pursuant to basic police training, deadly force can only be used an Immediate Defense of Life ("IDOL") situation, or in defense of immediate serious physical injury. | Clark Decl. at ¶ 9. |
| | 112. | At the time of the shooting, Officer Perniciaro had been trained pursuant to POST that deadly force should only be used when there is | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 65:1-4. |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | an immediate or imminent threat of death or serious bodily injury. | |
| 113. | Pursuant to basic police training, police officers must show a reverence for human life. | Clark Decl. at ¶ 11. |
| 114. | Police officers are trained that deadly forced is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. | Clark Decl. at ¶ 10. |
| 115. | Police officers are trained that they are required to justify every shot they fire. | Clark Decl. at ¶ 12. |
| 116. | Police officers are trained that they must be aware of their background when using deadly force. | Clark Decl. at ¶ 14 |
| 117. | Police officers are trained that an overreaction in using deadly force is excessive force. | Clark Decl. at ¶ 13. |
| 118. | Police officers are trained to give a warning prior to using deadly force, when feasible. | Clark Decl. at ¶ 15. |
| 119. | At the time of this incident, Officer | Perniciaro Depo. ("Exhibit 2" to |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | Perniciaro had been trained to use his police vehicle for cover. | Masongsong Decl.) at 40:5-7. |
| 120. | Police officers are trained that the use of a firearm against a moving vehicle is inherently dangerous and almost always ineffective. | Clark Decl. at ¶ 16. |
| 121. | At the time of this incident, Officers Leyva and Perniciaro had been trained that shooting at a moving vehicle is generally discouraged. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 74:7-10; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 62:21-63:3. |
| 122. | At the time of this incident, Officer Leyva had been trained as a police officer that firing at a vehicle or its driver is rarely effective and extremely hazardous to innocent persons. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 74:11-14. |
| 123. | Police officers are trained that shooting at the driver of a moving vehicle would not bring the vehicle to an immediate stop. | Clark Decl. at ¶ 17. |
| 124. | Police officers are trained that an assaultive motor vehicle does not presumptively justify the use of deadly force. | Clark Decl. at ¶ 18. |
| 125. | Police officers are trained that one | Clark Decl. at ¶ 19. |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | reason that shooting at a moving vehicle is discouraged is because doing so could disable the driver of the vehicle and cause the vehicle to go out of control and cause a more serious accident. | |
| 7<br>8<br>9<br>10<br>11<br>12 | 126. | At the time of this incident, Officer Leyva had been trained that shooting a driver of a vehicle at center mass could potentially cause serious injury and death, disabling the driver. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 48:25-49:2, 49:12-18. |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | 127. | Police officers are trained that if a vehicle appears to be coming in an officer's direction, that officer should get out of the path of that vehicle instead of discharging a firearm at the vehicle or its occupant(s), allow the vehicle to pass, and utilize other tactical or investigative means to apprehend the suspect. | Clark Decl. at ¶ 22. |
| 23<br>24<br>25 | 128. | Police officers are trained not to stand in the path of a vehicle they think might move. | Clark Decl. at ¶ 21, |
| 26<br>27 | 129. | Based on their training as police officers, Officers Leyva and | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 48:2-6; |

28

-63-

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | Perniciaro understand that if they find themselves in the path of a vehicle or potentially in the path of a vehicle, they should move out of the way instead of shooting. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 48:13- 49:5. |
| | 130. | Police officers are trained that deadly force should never be used against a moving vehicle unless there is an individual about to be run over and there is no opportunity to get out of the way, which was not the case during this incident. | Clark Decl. at ¶ 20. |
| | 131. | Police officers are trained that if they are able to get out of the path of a motor vehicle that was initially moving in their direction, then they should not shoot. | Clark Decl. at ¶ 24. |
| | 132. | If Officer Leyva felt that he was close to the path of the dark Honda, then he had ample room to move out of the way and in fact was out of the path of the dark Honda— therefore, there was no reason to shoot. | Clark Decl. at ¶ 36(b)(iv). |
| | 133. | At the time of this incident, Officer Leyva had been trained as CHP | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 47:22- 48:1; |

| | | | |
|---|---|---|---|
| | | officer that if he believes a vehicle is trying to get away or leave the area, he should not position himself in the path of that vehicle. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 46:10-13. |
| | 134. | Officer Leyva's understanding of the CHP policy regarding shooting at moving vehicles is that an officer should not deliberately place himself in front of or behind a vehicle in order to prevent that vehicle's escape. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 48:12-16. |
| | 135. | Pursuant to CHP HPM 70.6, Policy on the Use of Firearms, police officers shall not stand and/or step directly in front of or directly behind a vehicle in an attempt to impede its movement (prevent escape), intentionally creating circumstances where the use of deadly force becomes necessary. | Clark Decl. at ¶ 36(o). |
| | 136. | Police officers are trained that if a police officer is out of the path of a driver-occupied motor vehicle, then the officer should not shoot at the motor vehicle or its driver in defense of the officer's own life because there would be no | Clark Decl. at ¶ 23. |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | immediate threat of death or serious bodily injury. | |
| 137. | At the time of this incident, Officer Leyva had been trained, pursuant to the CHP policy with respect to shooting at moving vehicles, that a police officer can only shoot at the driver of a vehicle in an immediate defense of life situation. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 50:16-51:2. |
| 138. | At the time of this incident, Officer Perniciaro had been trained that if an officer anticipates that a vehicle is attempting to move, then the officer should reposition himself to a position of safety. | Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 47:24-48:4, 17-21. |
| 139. | Police officers, including Officer Perniciaro and Officer Leyva, are trained that a police officer cannot justify shooting at a moving vehicle simply because that vehicle was fleeing or trying to leave the area. | Clark Decl. at ¶ 25; Perniciaro Depo. ("Exhibit 2" to Masongsong Decl.) at 52:6-8. |
| 140. | Under the facts of this case, the officers would not have been justified in shooting at the dark Honda or its driver as a fleeing felon. | Clark Decl. at ¶ 36(s). |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 141. | Under the facts of this case, a reasonably well-trained officer would not have shot at the dark Honda or its occupants because the occupants were attempting to steal a vehicle. | Clark Decl. at ¶ 34. |
| **The Shooting was Excessive and Unreasonable** | | |
| 142. | Officer Leyva never yelled out "crossfire" or words to that effect, even though the officers' positions at the time of the shots created the potential for crossfire when they were to either side of the dark Honda, out of the path of the dark Honda. | Leyva Depo. ("Exhibit 1" to Masongsong Decl.) at 69:18-70:5; Clark Decl. at ¶ 35(b). |
| 143. | Officer Leyva did not give a warning that he was prepared to use deadly force prior to shooting. | Leyva Int. ("Exhibit 3" to Masongsong Decl.) at 36:27-37:1, 46:16-17; Herd Depo. ("Exhibit 5" to Masongsong Decl.) at 197:10-19. |
| 144. | Officers Leyva and Perniciaro violated basic police officer training regarding shooting at moving vehicles when they shot at the dark Honda. | Clark Decl. at ¶ 26. |
| 145. | A reasonable officer in the position of Officer Perniciaro would not have fired any shots during this | Clark Decl. at ¶ 32. |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| | | incident. | |
| | 146. | A reasonable officer in the position of Officer Leyva would not have fired any shots during this incident. | Clark Decl. at ¶ 32. |
| | 147. | Contagious shooting can be considered excessive force, and this is a case of contagious shooting. | Clark Decl. at ¶ 36(p). |
| | 148. | The officers overreacted when they used deadly force against the decedent and Mr. Herd, and an overreaction in using deadly force is excessive force. | Clark Decl. at ¶ 13. |
| | 149. | Both officers engaged in negligent pre-shooting tactics. | Clark Decl. at ¶ 35. |
| | 150. | The officers should have waited for backup rather than contacting the decedent and Mr. Herd in plainclothes and unmarked vehicles. | Clark Decl. at ¶ 35(d). |
| | 151. | The officers were negligent by failing to designate a contact-cover officer. | Clark Decl. at ¶ 35(b). |
| | 152. | The officers were negligent by placing themselves in a position that presented the possibility of crossfire. | Clark Decl. at ¶ 35(c) |

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | 153. | This was not an immediate defense of life situation. | Clark Decl. at ¶ 36(a). |
|---|------|------------------------------------------------------|-------------------------|
| | 154. | The shooting was excessive and unreasonable for the following reasons: (1) this was not an immediate defense of life situation; (2) at the time of all of Officer Leyva's shots, no person was in the path of the dark Honda; (3) at the time all of Officer Perniciaro's shots, no person was in the path of the dark Honda (4) the officers had other reasonable alternatives to shooting, including moving out of the way if that were necessary; (5) no officer was injured during this incident; (6) no officer had to run or dive out of the path of the dark Honda; (7) the officers lacked situational awareness during this incident; (8) the officers violated basic police training by shooting at the driver of a vehicle; (9) Officer Leyva violated his own policy when he fired at a driver of a vehicle; (10) no occupant of the dark Honda was armed; (11) no | Clark Decl. at ¶ 36. |

occupant of the dark Honda ever made any verbal threats; (12) the officers were not responding to a violent crime; (13) the officers had no information that the occupants of the dark Honda had committed any crime involving injury or death; (14) this was not a high-speed vehicle assault; (15) the officers showed no reverence for human life; (16) a subjective fear is insufficient to justify the use of deadly force; (17) the officers did not give the occupants of the dark Honda time to comply with any command(s) or warning(s), and giving a command or warning without giving time to comply is tantamount to not giving a command or warning at all; (18) Officer Leyva failed to give a warning that he was prepared to use deadly force prior to shooting. (19) Officer Leyva engaged in contagious shooting, and contagious shooting can be considered excessive force; (20)

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW

| | |
|---|---|
| the officers displayed an unprofessional and callous attitude when they used profanity with the occupants of the dark Honda; (21) the officers would not have been justified in shooting at the Honda or its driver as a fleeing felon under the facts of this case; (22) the officers overreacted when they fired shots, and an overreaction in using deadly force is excessive force. | |

**PLAINTIFFS' CONCLUSIONS OF LAW**

1. Plaintiffs are entitled to judgment in their favor as to their First Cause of Action pursuant to 42 U.S.C. section 1983 (excessive force) because the uncontroverted facts establish that Officer Perniciaro's use of force was excessive and unreasonable. As it applies to the facts of this case, the officers' subjective fear that Officer Leyva would be struck by the dark Honda is insufficient to justify Officer Perniciaro's shots. "A simple statement by an officer that he fears for . . . the safety of others is not enough; there must be *objective* factors to justify such a concern." *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001) (emphasis added).

2. Plaintiffs are entitled to judgment in their favor as to their First Cause of Action pursuant to 42 U.S.C. section 1983 (excessive force) because the shooting by Officer Perniciaro violated clearly established law, basic police officer training, CHP policy, and POST standards. *See Hope v. Pelzer*, 536 U.S.

730, 741 (2002) (the "salient question" is whether the state of the law gave the defendant "fair warning" that his alleged conduct was unconstitutional); *see also Hernandez v. City of Miami*, 302 F. Supp. 2d 1373, 1374 (S.D. Fla. 2004). It is clearly established that shooting at a vehicle where, as here, the vehicle and its occupants pose no immediate threat of death or serious bodily injury constitutes excessive force. *See, e.g., Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007) (shooting driver of slow-moving car not reasonable where driver posed no threat). Officer Perniciaro is not entitled to qualified immunity.

3. Plaintiffs dismiss their claims for denial of medical care.

4. Even if this Court were to apply the "purpose to harm" standard, Plaintiff A.G.'s Fourteenth Amendment claim would still survive because there is no legitimate law enforcement purpose in shooting at the dark Honda and its occupants because no officer was in the dark Honda's path or in danger of being struck by the Honda immediately prior to or during any of the shots. Where the facts regarding practical deliberation are disputed, only the jury can determine which of the two "shocks the conscience" standards apply. *Greer v. City of Hayward*, 229 F. Supp. 3d 1091 (N.D. Cal. 2017).

5. Plaintiffs are entitled to judgment in their favor as to their Seventh and Eighth Causes of Action for negligence against Office Perniciaro because the uncontroverted facts establish that Officer Perniciaro's use of force was objectively unreasonable under the totality of the circumstances. *Hayes v. City of San Diego*, 57 Cal.4th 622, 639 (2013).

6. Plaintiffs are entitled to judgment in their favor as to their Seventh and Eighth Causes of Action for negligence against Defendant State of California because Officer Perniciaro is liable, and the City is vicariously liable pursuant to Cal. Gov. Code § 815.2.

7. The objective evidence shows that the dark Honda posed no threat of death or serious physical injury to Officer Leyva; therefore, Officer Perniciaro's argument that he shot in defense of Officer Perniciaro is untenable, and the shooting constitutes a battery under California law. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, 528 (2009). Defendant City of Fontana is vicariously liable for Officer Leyva's misconduct under Cal. Gov. Code § 815.2.

8. Plaintiffs are entitled to judgment in their favor as to their Eleventh Cause of Action based on Civil Code section 52.1 because Officer Perniciaro acted with a reckless disregard for Mr. Herd's and Mr. Gleason's rights to freedom from unreasonable seizure, and a reckless disregard constitutes a specific intent under *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Accordingly, Defendant City of Fontana is vicariously liable for Officer Leyva's misconduct under Cal. Gov. Code § 815.2.

9. Judgment should be entered in favor of Plaintiffs.

PLAINTIFFS' RESPONSES & OBJECTIONS TO CITY OF FONTANA'S AND JASON PERNICIARO'S STATEMENT OF FACTS AND CONLCUSIONS OF LAW; PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS; CONCLUSIONS OF LAW